Hellmut **MATTHEIS**, Plaintiff,

v.

The **JOCKEY CLUB**, Defendant.

Civ. No. 74-38.

United States District Court,
E. D. Kentucky,
Covington Division.

Jan. 20, 1975.

Eddie W. Brown, Florence, Ky., for plaintiff.

Stoll, Keenon & Park by Gladney Harville, Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

This civil rights action alleges that the Jockey Club rule stipulating a time period for registering thoroughbred horses is unconstitutionally arbitrary and capricious. The defendant seeks summary judgment on the ground that the record does not support invocation of the Civil Rights Act, 42 U.S.C. § 1983, and that the challenged provision is not constitutionally deficient. The plaintiff has been afforded an opportunity for the submission of briefs and the record is before the court for decision.

The court is convinced that the absence of a "genuine issue as to any material fact . . . ." warrants summary judgment for the defendant. Rule 56(c), Federal Rules of Civil Procedure. The Jockey Club is a private New York corporation organized in 1894 to promote the American horse industry through, in part, the registration of animals satisfying certain ancestral criteria. This pursuit is reflected by the compilation of the American Stud Book, containing notations of all horses in the United States and Canada registered with the Club. The registration procedure is outlined in a booklet published by the defendant and furnished to requesting parties. Thus, Rule 2A-1 sets out varying registration fees depending upon the date the necessary papers are filed with the Club; although a foal must normally be registered by August 31 following its birth, payment of a penalty fee may permit late entry until December 31 of its second year; however, "(a) foal is *not* eligible for registration after January 1 of its three year old year." Rule 65 similarly provides

"Upon failure to register a horse before October 1st of the year of his birth, he may be registered prior to January 1st of his three-year-old year

by special permission of the Stewards of the Jockey Club, but not thereafter."

The plaintiff is a physician who for several years has maintained horse farms for recreation and tax purposes; during this period Mattheis acquired a copy of the Jockey Club Rules and successfully registered several animals. In March and April, 1973, the plaintiff submitted incomplete registration applications for three horses foaled on January 1, 1970;[1] he was thereafter notified that the requests were received several months beyond the maximum registration dates permitted in the rules. Unsuccessful attempts to secure an exception to the rule culminated in this action attacking the constitutionality of the time limits set out in Rule 2A–1.

The Civil Rights Act prohibits only conduct "under color of" state law; accordingly, a peripheral inquiry in any suit under 42 U.S.C. § 1983 is whether the challenged activity is in reality "state action". See United States v. Price, 383 U.S. 787, 794, note 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Although the plaintiff's conclusory allegation in this regard is itself deficient, Barrio v. McDonough District Hospital, S.D.Ill., 377 F.Supp. 317 (1974), it is apparent from the record that the registration activity of the Jockey Club does not remotely achieve the stature of state action. Rather, this judicial concept contemplates a more pervasive governmental involvement in the challenged conduct. As noted in Jackson v. Metropolitan Edison Company, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

"While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer.

* * * * * *

The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. . . . (T)he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." 419 U.S. 349, 95 S.Ct. 453.

The Jockey Club is a private organization unaided by any arm of government; its controllers include no state officials and its functions revolve solely around the protection of the thoroughbred horse industry. Such activities are surely no more imbued with a governmental aura than the liquor license, utility service, and receipt of government funds held insufficient in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Jackson v. Metropolitan Edison Company, supra; and Jackson v. Norton-Children's Hospitals, Inc., 6th Cir., 487 F.2d 502 (1973), cert. denied 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974).

■■ The mere reliance by the state racing commission upon the defendant's registration files is not sufficient to confer the requisite state involvement. Although essentially governmental activities may not be immunized through a fictitious characterization, Food Employees v. Logan Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), the "public function" doctrine applied to such functions connotes a more pervasive sovereign characteristic:

"Petitioner next urges that state action is present because respondent provides an essential public service . . . and hence performs a 'public function.' We have of course found

---

1. Although the horses were not actually foaled on January 1, 1970, Rule of Racing 5 provides that "(T)he age of a horse is reckoned as beginning on the first of January in the year in which he is foaled."

state action present in the exercise by private entity of powers traditionally exclusively reserved to the State. . . . If we were dealing with the exercise by Metropolitan of some power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain, our case would be quite a different one. But while the Pennsylvania statute imposes an obligation to furnish service on regulated utilities, it imposes no such obligation on the State.

. . .

\* \* \* \* \* \*

Doctors, optometrists, lawyers, Metropolitan, and *Nebbia's* [291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940] upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State." Jackson v. Metropolitan Edison Co., 419 U.S. 352, 95 S.Ct. at 454.

The maintenance of an animal registry is obviously not one of the "customary functions of government," Lloyd Corp. v. Tanner, 407 U.S. 551, 562, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), but a private attempt to benefit a commercial enterprise. The court is unable through an examination of the defendant's activities to locate the necessary state action for a proceeding under the Civil Rights Act.

■ A conclusion that the statute is properly invoked would prove unavailing in view of the unfounded arbitrariness attack against Rule 2A-1. It is initially apparent that the mere existence of the cutoff date is not constitutionally prohibited. Upholding a New York statute imposing certain time limitations upon the transferral between or association with political parties, the Court in Rosario v. Rockefeller, 410 U.S. 752, 93 S.

Ct. 1245, 36 L.Ed.2d 1 (1973), rejected the challenge to the limitation per se:

"(T)he statute merely imposed a time deadline on their enrollment, which they had to meet in order to participate in the next primary. . . . The petitioners do not say why they did not enroll prior to the cutoff date; however, it is clear that they could have done so, but chose not to. Hence, if their plight can be characterized as disenfranchisement at all, it was not caused by § 186, but by their own failure to take timely steps to effect their enrollment.

\* \* \* \* \* \*

As the dissent acknowledges, the State is certainly justified in imposing some reasonable cutoff point for registration. . . ." Id. 410 U.S. at 757–758, 760, 93 S.Ct. at 1249.

Nor is the particular span delineated in Rule 2A-1 susceptible to challenge. The plaintiff offers no argument supporting a finding that the regulation is "utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S. Ct. 1367, 4 L.Ed.2d 1435 (1960); 16 Am.Jur.2d "Constitutional Law" Section 550. Rather, the section represents an effort on the part of the defendant to minimize the misidentifications attributable to the passage of time; the numerous thoroughbreds registered annually by the Club make it imperative that each animal be independently catalogued. Despite these aims, the challenged rule accords a lengthy period within which to file applications. The court is convinced that the challenged rule represents a rational manifestation of the legitimate purposes for which the Jockey Club was formed. See Rosario v. Rockefeller, supra 410 U.S. at 762, 93 S.Ct. 1245.

An order will be entered sustaining the defendant's motion for summary judgment.